An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-1012

Filed 1 July 2026

Stanly County, No. 23JA000087-830

IN THE MATTER OF:
J.A.T.

Appeal by Father from judgment entered 14 July 2025 by Judge Phillip L. Cornett in Stanly County District Court. Heard in the Court of Appeals 4 June 2026.

*Reeves Divenere & Wright, by Anné C. Wright, for Respondent–Appellant Father.*

*Lauren Vaughan, for Petitioner–Appellee Stanly County Department of Social Services.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, LLP, by John L. Gibbons, for Appellee Guardian ad Litem.*

MURRY, Judge.

Respondent–Father (Father) appeals the trial court's order terminating his parental rights to his minor child, J.A.T. (Julian).[1] On appeal, Father argues that the trial court erred by concluding that grounds existed to terminate his parental rights based upon his willfully leaving Julian in placement outside the home for more than

---

[1] In accordance with North Carolina Rule of Appellate Procedure 42(b), we refer to the minor child by a pseudonym to protect his identity. *See* N.C. R. App. P. 42(b).

twelve months without showing reasonable progress in correcting the conditions which led to removal, willfully abandoning Julian for at least six consecutive months immediately preceding the filing of the termination petition, and dependency. Because the trial court's unchallenged findings support the conclusion that Father willfully left Julian in placement outside the home for more than twelve months without making reasonable progress, this Court affirms the trial court's order terminating Father's parental rights.

## I.  Background

On 23 July 2023, the Stanly County Department of Social Services (SCDSS) received a report alleging Julian and his mother (Mother) were homeless, alternating between living in a car and in a home without electricity or running water.[2] On 31 July 2023, SCDSS filed a petition alleging Julian was a dependent and neglected juvenile under N.C.G.S. § 7B-101. That same day, the trial court granted SCDSS non-secure custody of Julian.

Thereafter, Father informed SCDSS that he might be Julian's father and requested DNA testing. At this time, Father was incarcerated and unavailable to care for Julian. During this first period of incarceration, Father sent Julian only one card throughout the entirety of this case. On 30 November 2023, the trial court adjudicated Julian a neglected and dependent juvenile under N.C.G.S. § 7B-101(9), (15).

---

[2]  Mother does not appeal the trial court's termination of her parental rights.

After Father's release from prison and placement on parole on 9 April 2024, Father entered a program at Oxford House (a halfway house) where he received housing and employment resources. On 30 May 2024, based on the DNA testing results establishing Father as Julian's biological father, the trial court adjudicated him as such and added him as a party to this matter. That same day, Father entered into a case plan to achieve reunification with Julian.

Following a permanency-planning hearing on 5 September 2024, the trial court ceased reunification efforts with both parents, suspended Father's visitation rights, and adopted a primary permanent plan of adoption with a concurrent plan of guardianship, citing Father's failure to make progress in his case plan and maintain correspondence with SCDSS. As part of that order, the trial court found in relevant part that:

10. Father entered into a case plan on 30 May 2024 after DNA testing confirmed paternity. Currently:

   a. Father reported he was staying at the Oxford House, working at Moss Supply and doing night security work for Samaritan's House.

   b. SCDSS contacted Father for an update on his status on 5 August 2024. Father reported he had left Oxford House the night prior. The call disconnected right after the Social Worker asked about his employment. The Social Worker was unable to get anyone at the Oxford House to answer the phone.

   c. The Moss Supply Company informed the social worker that Father worked for them from 22 April to 6 June 2024, but then did not return to work. Samaritan's House reported that Father was never employed with their company.

d. Father has not reported any information about participating in counseling or substance abuse treatment. He has not reached out to the Social Worker or SCDSS regarding Julian or requesting contact or visitation.

e. Father has pictures of himself and Julian as an infant. However, neither the Mother nor Father acted legitimate to Julian. Once paternity was determined, Father was provided an opportunity to demonstrate an intent to work toward reunification with Julian. He has not demonstrated progress and has failed to maintain contact with SCDSS.

f. Father's failure to make progress in his plan and maintain contact with the Department does not make reunification likely. It is not in Julian's best interests to have visitation with Father at this time.

(Quotation modified.) The trial court also found that Father failed to "make adequate progress in a reasonable period of time" as he was not "actively participating in their plan," nor did he "remain available."

On 28 October 2024, SCDSS filed a petition to terminate Father's parental rights. On 13 November 2024, Father was arrested and incarcerated for absconding parole. At the termination hearing on 22 May 2025, the trial court took judicial notice of the entire record file and received its previous adjudication, disposition, and permanency-planning orders into evidence. As of the time of the hearing, Father was incarcerated in solitary confinement due to an infraction for assault. At the hearing, he explained that he had been unable to contact SCDSS or send any letters to Julian since his reincarceration due to being "in the hole."

The trial court entered an order finding in relevant part that:

33. Father left a message for the Social Worker on 11 June 2024. The Social Worker attempted to return the call, but his phone number was not working. Social Worker also reached out to the Oxford House and the places Father had reported employment. She received information that Father had left the Oxford House.

. . . .

43. Father has not demonstrated, to the satisfaction of the trial court, that reasonable progress under the circumstances has been made in correcting the conditions which led to the removal of the juvenile. While his ability to engage in all services is limited given his incarceration, he has failed to do even the bare minimum, such as writing to Julian. His circumstances are further limited by his continued infractions which lead him to being in the "hole." He had an opportunity to demonstrate progress during the time he was released from prison but failed to do so.

(Quotation modified.) The trial court concluded that grounds existed to terminate Father's parental rights to Julian under N.C.G.S. § 7B-1111(a)(2), (6)–(7) and that terminating Father's parental rights was in Julian's best interests. The trial court ultimately terminated Father's parental rights to Julian. Father timely appealed.

## II.    Jurisdiction

This Court has jurisdiction to hear Father's appeal because the trial court's "order . . . terminate[s his] parental rights" to Julian. N.C.G.S. § 7B-1001(a)(7) (2025).

## III.    Analysis

On appeal, Father argues that the trial court erred by concluding that grounds existed to terminate his parental rights under N.C.G.S. § 7B-1111(a)(2), (6)–(7). Specifically, he contends that the "trial court's findings are insufficient to support its conclusion[s]" that grounds existed to terminate his parental rights based upon (1)

willfully leaving Julian in foster care for more than twelve months without showing reasonable progress in correcting the conditions which led to removal, (2) willfully abandoning Julian for at least six consecutive months immediately preceding the filing of the termination petition, and (3) dependency. Because competent evidence in the record supports termination of Father's parental rights on the ground of willfully leaving Julian in foster care for more than twelve months without showing reasonable progress that led to his removal alone, we need not address the latter two arguments. *See* N.C.G.S. § 7B-1111(a)(2) (willfully leaving with lack of progress); *id.* § 7B-1111(a)(6) (dependency); *id.* § 7B-1111(a)(7) (willful abandonment); *In re D.R.W.*, 298 N.C. App. 18, 23 (2025).

A termination-of-parental-rights proceeding has two stages: adjudication and disposition. *See In re S.D.H.*, 296 N.C. App. 392, 398 (2024); N.C.G.S. §§ 7B-1109 to -1110. At the adjudicatory stage, the petitioner bears the burden of proving by "clear and convincing evidence" that one or more grounds for termination exists under § 7B-1111(a). N.C.G.S. § 7B-1111(a). The trial court need only find one of these grounds under N.C.G.S. § 7B-1111 to "support a termination of parental rights." *In re A.R.A.*, 373 N.C. 190, 194 (2019). In making its findings, the trial court may take judicial notice of adjudicative facts "not subject to reasonable dispute" because they are either "generally known within the territorial jurisdiction of the trial court" or are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." N.C. R. Evid. 201(b); *see* N.C.G.S. § 7B-1109(f)

(applying civil rules of evidence to termination hearings). Judicial notice may extend to a trial court's "findings of fact made in prior orders, even when those findings are based on a lower evidentiary standard" because we "presume[ ]" the trial court "disregarded any incompetent evidence and relied upon the competent evidence" in a non-jury proceeding. *In re A.C.*, 378 N.C. 377, 386 (2021) (quotation omitted). If the trial court determines that one or more grounds for termination exists under N.C.G.S. § 7B-1111, the proceeding continues to the dispositional stage where the trial court must determine whether termination would be in the child's "best interest." *In re M.A.*, 374 N.C. 885, 868 (2020). Because Father does not challenge the dispositional portion of the trial court's order, we consider only the adjudication.

We review a trial court's adjudication under N.C.G.S. § 7B-1109 to "determine whether the findings are supported by clear, cogent, and convincing evidence and whether the findings support the conclusions of law that one or more grounds for termination exist." *D.R.W.*, 298 N.C. App. at 23 (citation modified). If this evidence exists, the findings of fact are "conclusive even if the record contains evidence that would support a contrary finding." *In re S.R.*, 384 N.C. 516, 520 (2023). We also review the trial court's conclusions of law *de novo* to determine whether they are supported by the findings of fact. *See id.*

Father argues that the trial court's "findings are insufficient to support its conclusion" that grounds existed to terminate his parental rights based his willfully leaving Julian in a placement outside the home and lack of reasonable progress under

N.C.G.S. § 7B-1111(a)(2). For the following reasons, we disagree and affirm the trial court's order terminating Father's parental rights.

A trial court may terminate parental rights if "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than [twelve] months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2). In other words, the trial court must determine that, as of the hearing, (1) the juvenile has been willfully left in placement outside of the home for more than twelve months and (2) the parent has failed to make "reasonable progress under the circumstances to correct the conditions which led to removal of the child." *In re O.C.*, 171 N.C. App. 457, 465 (2005). The trial court may consider evidence of reasonable progress made by a parent "until the date of the termination hearing." *In re J.G.B.*, 177 N.C. App. 375, 385 (2006). "Willfulness is established when the respondent had the ability to show reasonable progress, but was unwilling to make the effort. A finding of willfulness is not precluded even if the respondent has made some efforts to regain custody of the children." *O.C.*, 171 N.C. App. at 465 (citation modified). Similarly, a parent's "prolonged inability to improve [his] situation, despite some efforts in that direction, . . . support[s] a finding of willfulness regardless of [his] good intentions." *In re A.N.R.*, 291 N.C. App. 333, 337 (2023) (quotation omitted). We have consistently held that a parent's "[i]ncarceration, standing alone, is neither a sword nor a shield in a termination of parental rights

- 8 -

decision." *In re K.B.C.*, 295 N.C. App. 619, 630 (2024) (quotation omitted).

Here, the trial court's unchallenged Finding of Fact #13 establishes that Julian was placed in SCDSS custody on 31 July 2023 and has "remained in the custody of SCDSS continuously since entering custody." This finding demonstrates that Julian was willfully left in a placement outside of the home for more than twelve months before SCDSS filed its motion to terminate Father's parental rights. Father does not challenge the portions of Finding of Fact #31 that he "was in jail when the case was filed and still incarcerated when paternity was established" and that he "sent one card to [Julian] throughout th[e] case." Nor does he challenge the trial court's finding that, after his release in April 2024, Father attempted to contact SCDSS once by leaving a message for the Social Worker on 11 June 2024.

Additionally, Father does not challenge the portions of Finding of Fact #35 stating that after his release from prison and placement on parole, Father "was listed as an absconder," "rearrested," "remains incarcerated," and was placed in solitary confinement as of the date of the termination hearing. Nor does he challenge the finding that he is "unable to send cards [to Julian] due to mainly being 'in the hole,'" which "he is currently in . . . for an assault." Concerning his post-release plans, Father does not challenge Finding of Fact #39, which states that he has "yet to develop[ ]" his "home plan . . . [for] after his release" but "hopes to get into a sober living facility" and "wants to work toward reunification." And Father does not challenge the trial court's taking of judicial notice of the trial court's previous orders,

including those with findings documenting Father's lack of progress with his case plan.

The unchallenged findings of fact show that Father sent one card to Julian throughout the duration of this case, unsuccessfully attempted to contact SCDSS only once, left his halfway house without providing SCDSS any contact information, absconded parole, was re-arrested and incarcerated at the time of the termination hearing, failed to send Julian any additional letters due to being placed in solitary confinement, and lacks stable and appropriate housing post-release. These findings support the trial court's conclusion that Father "has not demonstrated, to the satisfaction of the [trial court], that reasonable progress under the circumstances has been made in correcting the conditions that led" to Julian's removal.

While Father's incarceration likely limited his ability to correct some of these conditions, the unchallenged findings show that Father had periods of non-incarceration during the pendency of this matter, and the trial court noted Father's "opportunity to demonstrate progress during the time he was released from prison, but fail[ure] to do so." Thus, the trial court properly found that Father willfully left Julian in placement outside of the home for more than twelve months without showing reasonable progress in correcting the conditions which led to removal and concluded that grounds existed to terminate his parental rights under N.C.G.S. § 7B-1111(a)(2). Because the evidence and findings of fact support the conclusion that grounds existed to terminate Father's parental rights on the basis of willful leaving,

we need not address Father's arguments regarding the remaining grounds for termination. *See A.R.A.*, 373 N.C. at 194. Additionally, Father has not challenged the dispositional ruling that termination of his parental rights was in Julian's best interests. Thus, we affirm the trial court's order terminating Father's parental rights to Julian.

## IV.    Conclusion

For these reasons, this Court affirms the trial court's order terminating Father's parental rights to Julian.

AFFIRMED.

Judges GORE and FREEMAN concur.

Report per Rule 30(e).